## Williams v. Williams.

September 27, 1949.

C. A. Noble for appellant.

Napier & Napier, C. W. Napier and C. W. Napier, Jr. for appellee.

JUDGE CAMMACK—Affirming in part, reversing in part.

Elijah L. Williams, Jr. and Maude Williams were married on January 27, 1946. Early in February, Williams, who was in the army, returned to Camp Hood, Texas. He was not with his wife again until the fourth day of August. During the latter part of August he went back to his army encampment, and did not return home until he was discharged on October 7th. On November 14th he filed an action for a divorce wherein he alleged that he had learned his wife had been guilty of adultery during his absence, and that she had become pregnant in June and had admitted that fact to him. Mrs. Williams denied the charges, and sought a divorce and a reasonable amount for support, including doctor's bills, in her counterclaim. Mrs. Williams gave birth to a child on March 28, 1947. The doctor's certificate, which was signed by Dr. J. C. Coldiron, bore the date of March 31, 1947. The certificate showed the months of pregnancy to be nine.

On June 12, 1947, Williams was awarded an absolute divorce, and Mrs. Williams' counterclaim was dismissed. We gather from the brief filed by counsel for Mrs. Williams that Mr. Williams remarried shortly after the divorce decree was entered. Subsequently Mrs. Williams filed an amended answer and counterclaim and submitted additional depositions. The appellant sought to have the supplemental depositions stricken, but this motion was never passed upon. On September 7, 1948, the court entered a supplemental judgment modifying and extending the original judgment. The supplemental judgment directed that Mrs. Williams have the care and custody of her child, and that Mr. Williams pay to her the sum of $100 and also $15 per month for the child's support.

On the appeal Mr. Williams is complaining of the supplemental judgment. On her cross-appeal Mrs. Williams insists she was entitled to a divorce and that an award of alimony should have been made in her favor.

She insists also that the amount allowed her for the support of the child is insufficient.

The case was handled in a rather unusual manner, but we fail to see where the substantial rights of either party were prejudiced thereby. Likewise, the evidence presents a somewhat unusual situation. According to the testimony of the appellant and that of his stepmother, Mrs. Williams told them that she had been with Cullen Ritchie at a dance on June 15th and had become pregnant by Ritchie at that time. Williams said he became suspicious of his wife when he returned from the army in October, 1946, and that she finally admitted she had been with Ritchie. Mrs. Williams did not deny that she had ridden from a dance with Ritchie sometime around June 15th. She said, however, that she was not alone with Ritchie at any time. It was shown also that two other couples returned from the dance with Mrs. Williams and Ritchie in the same car. When asked on cross-examination if she had told her husband that the baby might be Cullen Ritchie's, Mrs. Williams answered, "Yes." In answer to the question "Why," she said, "He made me mad and I would tell him anything when I'm mad. I just passed it off for a big joke." When asked if she passed it off for a joke, she said, "Yes he had me so mad I didn't know what I was doing."

For the appellant it is insisted Mrs. Williams admitted that Cullen Ritchie was the father of her child. On the other hand, her story is that her husband and stepmother were mistreating her and making her life miserable, and in a fit of anger she told her husband the child might be Cullen Ritchie's just to make him mad. It is significant that she did not deny she made the statement about Cullen Ritchie, which she might well have done. Furthermore, the explanation she gave for the statement was not without some measure of credence. It is significant also that there is no other evidence of relationships between Mrs. Williams and Ritchie.

This Court has pointed out frequently that proof necessary to bastardize a child must go beyond a reasonable doubt and must be of a higher degree than that required to convict a person of even a minor criminal offense. Moore v. Moore, 301 Ky. 14, 190 S. W. 2d 689. It was pointed out also in the Moore case that a woman ordinarily carries a child 280 days after its conception,

but that the period of pregnancy sometimes varies from 220 to 330 days. Under the proof before us, Mrs. Williams carried her baby for not more than 236 days if Mr. Williams was its father. On the other hand, she carried it some 283 days if Cullen Ritchie was its father. There was lay proof to the effect that the baby came prematurely. On the other hand, the doctor's certificate, which was not based on first hand information, showed that the period of pregnancy was nine months.

The child was born in lawful wedlock, so there is a legal presumption of its legitimacy. It may be conceded that the evidence raises some doubt as to the child's legitimacy, but we are not prepared to say that it meets the test of the character of evidence necessary to bastardize a child. Therefore, we think the judgment should be, and is, affirmed on the appeal.

It is reversed on the cross-appeal because we think the allowance of $15 per month for the child's support is inadequate. This allowance should be increased to at least $25 per month for the time being. Wherefore, the judgment on the cross-appeal is reversed with directions to set it aside and for the entry of a judgment on that phase of the case in conformity with this opinion.