George Scott BRADSHAW, Jr., Appellant,

v.

Dollie BRADSHAW, Appellee.

Court of Appeals of Kentucky.

Nov. 9, 1956.

P. H. Vincent, Ashland, for appellant.

Thomas Burchett, Ashland, for appellee.

SIMS, Judge.

This is an appeal from a judgment declaring George Scott Bradshaw, Jr., to be the father of Richard Arlen Bradshaw, who was born December 7, 1949, and ordering him to pay $35 a month to the mother for the support of the child.

As all the principal actors in this drama have the same surname and all but the mother have a double name, we will refer to them by their given names.

A divorce suit was pending between Scott and Dollie and they were in a struggle over the custody of their son, Roger, who was born December 15, 1947. The divorce judgment was entered May 6, 1949, giving the mother the custody of the child and ordering the father to pay her $35 per month for Roger's support. Dollie testified that on April 8, 1949, she spent the night in the Milner Hotel in Ashland, Ky., with appellant, became pregnant and on December 7, 1949, bore the child in question, Richard. Scott denied the paternity of Richard, as well as being in the hotel with Dollie on the night of April 8th.

It may be well to note here that Richard is what is commonly known as an "eight month baby", as he was born 7 months and 29 days after conception, so his mother testified. This is not an unusual occurrence as medical authorities say the time of gestation varies from 220 days to 330 days. See Ratliff v. Ratliff, 298 Ky. 715, 183 S.W.2d 949, 952. According to Dollie, she carried this child 249 days.

Hon. J. G. M. Robinson, Master Commissioner of the Boyd Circuit Court, heard the evidence in the divorce suit, as well as in the instant case. Scott filed a motion to have the circuit judge appoint a special commissioner to sit in the instant case because "Robinson was prejudiced against him." This motion was supported by the affidavit of Scott stating certain rulings of the commissioner showed he was prejudiced against appellant. One ruling was to the effect that a child begotten in wedlock, but born after the parents are divorced, is entitled to be supported by the father; and another ruling was that the mother in the circumstances proven was entitled to the custody of the first child even if he believed the charges made against her were true.

■■■■ We are unwilling to apply the provisions of KRS 23.230 (which relate to swearing a judge off the bench for prejudice) to master commissioners, since the circuit judge and not the master commissioner rules on the motion. The circuit judge certainly has judicial discretion in determining whether he will appoint a special commissioner. The exhaustive report filed by the commissioner in which he made a complete and fair analysis of the testimony convinces us that the circuit judge did not abuse his discretion in overruling the motion of Scott for the appointment of a special commissioner.

■■■■ In this jurisdiction there is a strong presumption that a child conceived during the time of wedlock is the legitimate offspring of the husband. Williams v. Williams, 311 Ky. 45, 223 S.W.2d 360. We have written the proof required to rebut such presumption must be of the strongest character and so convincing as to remove a reasonable doubt. To bastardize a child, the evidence must be of a higher degree than that required to convict a person of even a minor criminal offense. Moore v. Moore, 301 Ky. 14, 190 S.W.2d 689. There are two circumstances commonly resorted to which will successfully rebut this presumption: One is where the proof shows a complete lack of access to the wife by the husband, Wilson v. Wilson, 174 Ky. 771, 193 S.W. 7; the

other is where the proof shows the husband to be completely impotent. Goss v. Froman, 89 Ky. 318, 12 S.W. 387, 8 L.R.A. 102. Scott does not claim his case falls within the second exception and admits he is the father of Dollie's first child, Roger, who was born during their marriage. So our problem is to determine whether or not Scott had access to Dollie at or about the time she testified Richard was conceived.

Dollie testified emphatically she and Scott spent the night of April 8, 1949, together in the Milner Hotel in Ashland (their home town), registered as man and wife, that she became pregnant on that occasion and Richard was born 7 months and 29 days thereafter. Scott denies he was with appellee on the night of April 8th in the hotel, or that he ever had sexual intercourse with her after their separation. There is a photostatic copy of the hotel register of April 9, 1949, in the record and it shows that "Mr. and Mrs. Scott Bradshaw" registered at 1:10 A. M., for Room 207, which was marked "Pd". Scott denies this register was signed by him and says the writing is not in his hand. He calls attention to the fact Dollie testified that the writing on the hotel register is the same appearing on checks which Scott had given her for the maintenance of Roger. Scott testified his father, and not he, had signed all such checks. No handwriting expert was introduced on either side.

■ The commissioner, while not posing as a handwriting expert, in his report compared Scott's admitted signature with the writing on the hotel register, and after pointing out certain marked similarities between Scott's known signature and the writing on the hotel register, held the writing on the register was that of Scott and not of his father. Regardless of whether Scott signed the register, we agree with the commissioner and the court that Scott was shown to have had access to Dollie at the time Richard was conceived.

There is evidence in the record that after Richard was born Dollie was keeping company with other men. This she denied. Whether or not she was guilty of acts of indiscretion or even if she committed adultery after she was divorced, this would not overcome her testimony that Richard was conceived on the night of April 8th, since under Wilson v. Wilson, 174 Ky. 771, 193 S.W. 7, we will not bastardize a child conceived in wedlock unless the proof shows clearly and convincingly the husband had no access to his wife.

The record shows Scott and Dollie lived in the same town. They had their matrimonial differences which ended in divorce on May 6, 1949, but they were not altogether antagonistic to each other while the divorce proceedings were pending or after the divorce was granted. He visited her in the hospital during her pregnancy and she brought him to her home after they were divorced and nursed him after an automobile accident.

During the proceedings in which Dollie was trying to get custody of her first child, Roger, she filed her amended petition on August 9, 1950, wherein she averred Scott got her with child on April 8, 1949. This amended petition was dismissed on her motion on January 2, 1952, then on November 9, 1954, she filed motion to redocket the case and asked the court to increase her allowance for the maintenance of Roger and to make an allowance for the support of Richard. Scott complains about her dismissing her amended petition and then practically three years later refiling it. Dollie explains this by testifying her father became disgusted with Scott for refusing to support Richard and agreed to support the child himself but subsequently he became unable to do so. However, this has little, if any, bearing on whether Scott got Dollie with child on April 8, 1949.

The judgment is affirmed.