Vernon Dale SIMMONS, Appellant,

v.

Linda Carol SIMMONS, Appellee.

Linda Carol SIMMONS, Cross-Appellant,

v.

Vernon Dale SIMMONS, Cross-Appellee.

Court of Appeals of Kentucky.

March 31, 1972.

**586**

William G. Reed, Carrollton, for appellant and cross-appellee.

Mrs. E. Irene P. Long, Bedford, for appellee and cross-appellant.

VANCE, Commissioner.

Under consideration are an appeal and a cross-appeal from a judgment which awarded a divorce to both husband and wife; awarded custody of three children to the mother; awarded $30.00 per week for support and maintenance of the children and adjudged the husband not to be the father of a fourth child whose paternity was disputed.

The husband appeals from that part of the judgment which awarded the custody of the children to the wife and directed him to pay child support. By cross-appeal the wife challenges the adequacy of the award for child support and contends that the court erred in adjudicating the husband not to be the father of the fourth child.

The parties were married on August 22, 1959. The three children acknowledged by the husband were born in 1960, 1962 and 1964. The fourth child, whose paternity is disputed, was born August 8, 1967.

The husband and wife separated in October 1966 and occupied separate residences until shortly after the birth of the fourth child. The husband lived with his parents during the separation and had the custody of the three children. The wife frequently visited the children and at least on some occasions the husband was at home during the visitations. The wife contends and the husband denies that they engaged in sexual relations during their separation.

The husband, wife, and the fourth child each submitted to a blood-grouping test and a report from the laboratory which performed the test was admitted in evidence, without objection, as testimony in chief for the husband. The report ruled out the possibility that the husband was the father of the fourth child.

Except for the inferences which might be drawn from the results of the blood-grouping test, there was no evidence of adultery on the part of the wife. A few weeks after the birth of the fourth child the parties became reconciled and lived together until this action was instituted by the husband in November 1969. The child was then two years old.

■ Both the husband and the wife are employed and their earnings are substantially equal. The court found the wife to be a fit and proper person to have the custody and control of the children and awarded them to her. The principal arguments advanced by the husband are that the wife was shown to be morally unfit and that she voluntarily gave up custody of the children during each of their separations.

It is true that the husband took custody of the children on the occasion of each separation but the evidence does not establish that the wife abandoned the children. She testified that she wanted custody at all times. She visited with the children frequently during the first separation and she was in fact awarded custody during the pendency of this litigation. Several wit-

nesses attested to her interest in and devotion to the children.

The evidence utterly failed to show any promiscuity on her part and did not compel a finding of moral unfitness. See Dudgeon v. Dudgeon, Ky., 458 S.W.2d 159 (1970). Upon consideration of all the evidence we cannot say the chancellor abused his discretion in awarding custody of the children to the wife or that his finding of her fitness for that trust was clearly erroneous.

██ The question of the paternity of the fourth child calls upon us to determine whether a blood-grouping test which results in a showing of nonpaternity is sufficient to overcome the legal presumption of legitimacy.[1] The presumption that a child born in wedlock is legitimate is the strongest known to our law. Though rebuttable, it can be overcome only by evidence so clear, distinct and convincing as to remove the question from the realm of reasonable doubt. Gross v. Gross, Ky., 260 S.W.2d 655 (1953). In Williams v. Williams, 311 Ky. 45, 223 S.W.2d 360 (1949), we said that proof necessary to bastardize a child must go beyond a reasonable doubt and must be of a higher degree than that required to convict a person of even a minor criminal offense.

In earlier times a denial of paternity by a husband was nearly impossible to prove. Lack of similarity of physical characteristics between husband and child was no more than a circumstance. A husband's claim of physical separation from the wife, if disputed, resulted only in uncertainty. Except in those instances in which access by the husband was impossible, the best that could be done by the courts was to resort to the presumption of legitimacy as a matter of policy.

The advanced technology used in blood-grouping test procedures interpreted in the light of genetic knowledge has enabled medical science in certain cases to rule out paternity. It has been established that blood characteristics of children are inherited from their parents. A child will have the blood type of either its father or mother. When the blood-grouping tests show that the child has a blood type different from both its mother and her husband, the husband is scientifically excluded as being the father of the child.

Courts generally are giving increased recognition to such tests. Where the accuracy of the testing procedure is shown, the results of blood-grouping tests are generally admissible to show nonpaternity. The weight given to such tests differs in various jurisdictions with some states holding that tests which show nonpaternity are conclusive evidence of that fact while others accord to the tests the same evidentiary weight as other evidence.[2]

██ In this case a laboratory report of the results of the blood-grouping tests was admitted in evidence, without objection, as testimony in chief for the husband. Any question as to the accuracy of the testing procedure was waived by the failure to object to the admission of the report.

We now hold that when a blood-grouping test, not objected to upon grounds of accuracy, reliability or admissibility, shows nonpaternity of an alleged male parent, a chancellor is entitled to rely upon the test. If he is persuaded thereby, his judgment cannot be classified as clearly erroneous.

Whether the tests can be said as a matter of law to be conclusive of nonpaternity, we do not now decide. We leave that question until it is squarely presented as

1. In bastardy cases the court may order blood-groupings tests and in the absence of contrary results the question of paternity shall be resolved according to the tests. KRS 406.081. However, Chapter 406 of the Kentucky Revised Statutes is limited in application to cases of birth out of wedlock. KRS 406.080.

2. For a compilation of cases upon the admissibility and weight of blood-grouping tests see Annotation, 46 A.L.R.2d 1000–1038.

an issue.[3] In this case the chancellor determined that the husband was not the father of the disputed child. We think that determination was amply supported by evidence of probative value.

■ Upon the issue of child support the mother testified that she would need $30.00 or $40.00 per week and this was in the context of support for four children rather than three. The chancellor allowed the sum of $30.00 per week for the support of three children. The amount of an allowance for child support is a matter peculiarly within the discretion of the chancellor. Although we consider the amount awarded here to be minimal, it does not appear to be so low as to constitute an abuse of discretion.

The judgment is affirmed on the appeal and on the cross-appeal.

All concur.

---

3. The question presented in the brief for cross-appellant was: "Did the chancellor err in his determination of the paternity question?"