Jo Nell **TACKETT**, Appellant,

v.

Thomas J. **TACKETT**, Appellee.

Court of Appeals of Kentucky.

Feb. 1, 1974.

As Modified on Denial of Rehearing
May 3, 1974.

Dan Jack Combs, Combs & Combs, Pikeville, for appellant.

Scott Collins, Prestonsburg, for appellee.

STEINFELD, Justice.

Appellant Jo Nell Tackett and appellee Thomas J. Tackett, now both in their thirties, were married November 5, 1960. During the marriage two children were born; Jennifer and Thomas, Jr., now ages six and two years respectively.

On August 13, 1972, Jo Nell took the children to Ohio and four days later Thomas filed in the Floyd Circuit Court a petition for the dissolution of the marriage and for custody of the children. A custody hearing was held December 8, 1972, and the court granted temporary custody of the children to Jo Nell, gave her the use of a 1963 Volkswagen, and ordered Thomas to pay her $30 per week for support. (Thomas had been paying Jo Nell at least $30 per week since she left for Ohio.)

On December 12, 1972, Thomas filed the following request for admissions:

"1. That Thomas J. Tackett, the petitioner, is or has blood type 'B' (Positive); and

2. That the respondent Jo Nell Tackett is or has blood type 'O' (Negative); and

3. That the infant, T. J. Tackett, Jr., has or is blood type 'A' (Positive); and

4. That there is no way, physically, genetically, scientifically, and/or legally that the infant is or can be the child or physical offspring of the petitioner, Thomas James Tackett; and

5. That the child is in fact not the child of Thomas J. Tackett, the petitioner."

Pertinent parts of Jo Nell's answers follow:

"REQUEST NO. 1—* * * The respondent is without sufficient knowledge or information upon which to form a belief as to the truth of the statements contained in Request No. 1. * * *.

* * * * * *

"REQUEST NO. 3—* * * She says that she is without knowledge or information sufficient to form a belief as to the blood type of T. J. Tackett, Jr., and that his blood type is not material to the issues herein. * * *."

She declined to admit Request No. 2 and denied Requests Nos. 4 and 5.

On January 10, 1973, Thomas again filed request for admissions as follows:

"1. That Thomas J. Tackett, the petitioner, is or has blood type 'B' (positive); and

2. That the respondent, Jo Nell Tackett, is or has blood type 'O' (negative); and

3. That the infant, T. J. Tackett, Jr., is or has blood type 'A' (positive); and

4. That there is no way, physically, genetically, scientifically, and/or legally that the infant is or can be the child or physical offspring of the petitioner, Thomas J. Tackett; and

5. That the child, T. J. Tackett, Jr., in fact is not the child of the petitioner, Thomas J. Tackett."

This request for admissions was never answered.

A hearing was held February 1, 1973, to decide who would have permanent custody of the children and how the property was to be allocated. On April 3, 1973, the court issued the decree, in pertinent part as follows:

"1. The marriage is hereby dissolved and both parties are restored to the status of single persons.

2. Thomas James Tackett is awarded custody of the child, Jennifer, and Jo Nell Tackett is awarded the custody of the child, T. J., II. The mother shall have the usual and customary visitation rights, * * *.

3. Jo Nell Tackett is awarded the Volkswagon automobile, and Thomas James Tackett is awarded the Chevrolet automobile.

4. Thomas James Tackett is awarded the house (together with the household goods and furnishings for the same), and the Sheepfield lot.

5. Thomas James Tackett shall pay to Jo Nell Tackett the sum of $4,500.-00, and the cost of this action, including an additional $400.00 in attorney's fee, making a total of $900.00 to and for the respondent's attorneys.

* * * * * *

7. The court, in this difficult case, if he has erred, remembers that the question of custody may be re-examined should conditions change."

In its conclusions of law, the court stated in part:

"There is a presumption that the child belongs to a couple who are married at the time of its birth. (KRS 406.011). However, being merely a presumption, it is subject to be overcome by proof. (Tarter v. Medley, Ky., 356 S.W.2d 255 (1962) ). In this instance the respondent had information from which she could have either admitted or denied the blood types and the scientific and legal effect thereof. Having failed to deny the request, the facts are taken as admitted. (37.02(2A) [(2)(A)]).

Evidence not showing that the child was illegitimate authorized an order di-

recting the father to support the child. (Wilson v. Wilson, 65 S.W.2d 694 (1933), 251 Ky. 522). The converse of this rule is that if the child is illegitimate then the marital partner not the parent of the child does not owe it support. Therefore, the petitioner does not owe the child, T. J. a duty of support."

Jo Nell appeals from this decree and seeks (1) a determination that Thomas is the father of Thomas, Jr.; (2) custody of Jennifer; (3) a more equitable distribution of the property, and (4) provision for the support and maintenance of herself and the two children.

CR 36.01(2) in part provides:

"An answering party may not give lack of information or knowledge as a reason for failure to admit or deny unless he states that he has made reasonable inquiry and that the information known or readily obtainable by him is insufficient to enable him to admit or deny."

■ Because Jo Nell did not comply with the quoted part of CR 36.01(2) in answering the first request for admissions and because she failed to answer the second request for admissions, the trial court ruled that the matters contained therein are admitted. CR 36.01(3), 36.02, 37.02(2)(A). On the basis of these admitted matters and without any other proof on the subject, the court declared Thomas, Jr., to be illegitimate. "Though the presumption of paternity and legitimacy is one of the strongest known to the law, it is not conclusive but is rebuttable and may be overcome by factual evidence." Tarter v. Medley, supra.

The results of Jo Nell's admissions are that Thomas has blood type "B" (Positive), that Jo Nell has blood type "O" (Negative), and that Thomas, Jr., has blood type "A" (Positive). Request 4 seeks an answer which would be only a conclusion, therefore Jo Nell's denial of this request is inconsequential. In Simmons v. Simmons, Ky., 479 S.W.2d 585, at page 587 (1972), in which there was scientific evidence regarding blood-grouping tests, we wrote:

"When the blood-grouping tests show that the child has a blood type different from both its mother and her husband, the husband is scientifically excluded as being the father of the child."

Summarizing State ex rel. Steiger v. Gray, Ohio Juv., 145 N.E.2d 162, (1957), it was written in Words and Phrases·Permanent Edition, Vol. 5, page 794:

" 'Blood grouping tests' are governed by the immutability of the scientific law of blood grouping and are conducted for the purpose of determining non-paternity and are based upon the scientific principle that the type of blood of a child is inherited from a combination of blood groups in the blood of its parents; they have often been called 'the fingerprints of blood.' " [1]

■ The factors which are considered in blood-grouping tests are more than a determination of blood types, therefore the question of paternity cannot be resolved on a naked showing of blood type without " * * * expert opinion because the conclusions * * * are based upon medical research, and involve questions of chemistry and biology with which a layman is entirely unfamiliar." Arais v. Kalensnikoff, 10 Cal.2d 428, 74 P.2d 1043, 115 A.L.R. 163 (1937). Cf. Groulx v. Groulx, 98 N.H. 481, 103 A.2d 188, 46 A.L.R.2d 994 (1954). The trial court erred in resolving the question of whether Thomas was the father of Thomas, Jr., in the absence of substantial evidence establishing that fact. KRS 406.-111.

A hearing, when demanded, should be held to determine the parentage of Thomas, Jr. At the conclusion of the hearing the

1. For a discussion regarding blood-grouping tests, see 46 A.L.R.2d 1000.

trial court can then make a determination as to parentage and the custody of Thomas, Jr.

The court awarded permanent custody of Jennifer to her father. At the conclusion of the parentage hearing, the judge can reevaluate this custody award, if necessary, in the light of Clay v. Clay, Ky., 334 S.W. 2d 909 (1960), and can reconsider the allowance for support.

On the basis of the evidence the trial court did not err in its award of property or maintenance. There was a failure by Jo Nell to show that she was entitled to more than that which she was awarded. Colley v. Colley, Ky., 460 S.W.2d 821 (1970).

The judgment is affirmed with regard to the division of property and as to maintenance, and is remanded for further action consistent herewith.

OSBORNE, C. J., and JONES, MILLIKEN, PALMORE, REED and STEINFELD, JJ., sitting. All concur.