George Edward BARTLETT, Appellant,

v.

**COMMONWEALTH of Kentucky, ex. rel. Gloria M. CALLOWAY, Appellee.**

Supreme Court of Kentucky.

Feb. 27, 1986.

Darryl T. Owens, Michael T. Alexander, Louisville, for appellant.

John W. Fleck, Dennis R. McGlincy, James P. McCrocklin, Louisville, for appellee.

LEIBSON, Justice.

This is a paternity action filed in Jefferson District Court pursuant to KRS Ch. 406, the Paternity Act. The appellant was adjudicated the father of a child, Miri Calloway, (seven years old, born May 24, 1975), and ordered the appellant to pay thirty dollars ($30.00) per week for her support.

The judgment in District Court was appealed to and reversed by the Jefferson Circuit Court. On further appeal to the Kentucky Court of Appeals, the Circuit Court was reversed. We affirm the Court of Appeals and the original District Court judgment establishing paternity and directing payment of child support.

The issue is whether the evidence offered in the paternity action in Jefferson District Court was sufficient to sustain the judgment of paternity. The Commonwealth relied primarily on evidence of the test results of a relatively new system of paternity testing utilizing human leukocyte antigens (HLA). This is a white blood cell, tissue typing test, called HLA testing. This testing yields positive results proving paternity, whereas older testing only disproved it. The test results in this case yielded a "paternity index," or "probability" factor, of *"99.93%,"* and a statement that: "Paternity is practically proved." The expert's report was admitted at trial as provided by KRS 406.091(5).

The trial record includes the uncontradicted affidavit of Dr. Lynn Ogden, a doctor of medicine specially trained in clinical pathology, establishing the reliability and accuracy of this test. Attached to Dr. Ogden's affidavit as an Exhibit is an explanatory article by Dr. Paul I. Terasaki, an internationally recognized authority on the subject. This article is reported in Vol. 16, No. 3, University of Louisville School of Law Journal of Family Law, (1977–78).

This was not the only evidence offered in District Court to prove the appellant's paternity. We agree with the Court of Appeals that the record in this case is not noted for clarity, and we doubt that we can do better with the record than the Court of Appeals' summary, as follows:

"It does appear that Richard Russell Calloway (who is not a party to this action) married ... Gloria, on August 9, 1970. ... According to Gloria, she and Richard separated in 1972 and she denied ever having lived with Richard from that time or ever having sexual relations with him from that period. On the other hand, Richard thought that he and Gloria had separated in 1974 and that even after separation he and Gloria had sexual intercourse. He said they were divorced in 1978 or 1979. Gloria maintains that she and George [Bartlett] lived together as if they were husband and wife (off and on) for approximately five years. George, on the other hand, barely acknowledges knowing Gloria but does admit to having had relations with her and having made, at least on one occasion, some monetary provisions for Gloria and the child."

To this we would add that Bartlett admitted at least one common physical genetic characteristic with the child, "six fingers."

The fact that HLA blood testing may be ordered by the court in a paternity action, its reliability and its admissibility as evidence, are all recognized by this court in our opinion in *Perry v. Com., Ex. Rel. Kessinger*, Ky., 652 S.W.2d 655 (1983). We state:

"In a proper case KRS 406.111 in the discretion of the court permits such results also to be admitted to show the possibility of the alleged father's paternity. The HLA blood test has demonstrated this capability and hence is of value also to the plaintiff. The broad nature of this statute implies that blood-test evidence presented by qualified experts will be considered for admission even though representing a recently discovered technology...." *Id.* at 661.

The problem in this case is that this child was conceived while Gloria Calloway was married to Richard Calloway. For centuries, because it was so difficult to determine paternity, the court has always opted for the husband as the father of the child where that possibility existed. This "presumption of paternity" is codified in KRS 406.011, which states in pertinent part:

"A child born during lawful wedlock, or within ten (10) months thereafter, is presumed to be the child of the husband and wife."

But this presumption is *not* conclusive. KRS 406.011 continues:

"However, a child born out of wedlock includes a child born to a married woman by a man other than her husband where evidence shows that the marital relationship between the husband and wife ceased ten (10) months prior to the birth of the child."

*Tackett v. Tackett*, Ky., 508 S.W.2d 790 (1974) reminds us that, as in the case of most legal presumptions, the presumption of legitimacy is rebuttable:

"Though the presumption of paternity and legitimacy is one of the strongest known to law, it is not conclusive but is rebuttable and may be overcome by factual evidence." *Id.* at 792.

In *Simmons v. Simmons*, Ky., 479 S.W.2d 585 (1972), we add this caveat:

"Though rebuttable, it [the presumption of legitimacy] can be overcome only by evidence so clear, distinct and convincing as to remove the question from the realm of reasonable doubt." *Id.* at 587.

*Simmons* was a divorce case where the husband was adjudicated not to be the father of a child born during wedlock, and we stated that the trial court's judgment of nonpaternity "cannot be classified as clearly erroneous." As in the present case, the principal evidence relied on in the trial court was the results of blood tests. In *Simmons*, testing was utilized to disprove paternity rather than to prove it as was done in the present case. But the scientific advances in testing capabilities obviate the difference.

From this brief review of the cases we conclude that the question before us is whether the trial court could reasonably view the evidence as sufficient "to remove the question from the realm of reasonable doubt." The evidence relied on to do so was principally, but not exclusively, the HLA testing. Since it confirms the appellant's paternity within a 99.93% degree of accuracy, we cannot classify the trial court's judgment as "clearly erroneous." *Simmons, supra* at 587.

The mother's testimony, if believed, was sufficient to establish "that the marital relationship between the husband and wife ceased ten (10) months prior to the birth of the child." KRS 406.011, *supra*. We need not decide whether the HLA testing standing alone would be sufficient to overcome the presumption of legitimacy and establish the appellant's paternity. Certainly, the HLA testing when corroborated by the evidence of access, the contribution toward support, and a similar genetic characteristic, is so overwhelming as to constitute proof beyond a reasonable doubt.

By this opinion we acknowledge the importance of HLA blood testing in supplying evidence as necessary to overcome the presumption of legitimacy and the requirement of proof beyond a reasonable doubt.

Truth and justice are irrevocably bound. They are Siamese twins sharing a single heart beat. Neither can survive very long without the other. When the advances of science serve to assist in the discovery of the truth, the law must accommodate them. The law cannot pick and choose when truth will prevail.

■ The appellant has argued that this is "a back door attempt to terminate the parental rights of Richard (Calloway)," the husband, who has never denied that he is the parent of this child and who is not a party to this action. This case does not adjudicate the parental rights or duties of a nonparty.

The appellant has argued that the effect of this decision is to "bastardize" the child. This is not the legal issue in this case.

The effect of this decision is to decide the appellant's paternity and his obligation of support. It is confined to the parameters of Ch. 406, the Uniform Act on Paternity. This case does not adjudicate the rights, duties or obligations of Richard Calloway, who is not a party to this action.

*Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551, (1972), held that under the Due Process Clause of the Fourteenth Amendment, a man claiming to be an unwed father was entitled to notice and a hearing in a proceeding to determine guardianship. This is inapposite. The decision in *Stanley v. Illinois, supra,* does not bear on our decision in the present case because we make no decision adjudicating the rights and duties of Richard Calloway.

The judgment of the Court of Appeals is affirmed.

STEPHENS, C.J., and AKER, GANT, LEIBSON and VANCE, JJ., concur.

WINTERSHEIMER, J., dissents by separate opinion in which STEPHENSON, J., joins.

WINTERSHEIMER, Justice, dissenting.

I dissent because blood test evidence indicating a mere probability of paternity is insufficient to rebut the presumption that a child conceived during marriage is a legitimate child of the husband.

It has been well established in Kentucky that a child possibly conceived during lawful wedlock is presumed to be the child of the husband and wife. *Bradshaw v. Bradshaw*, Ky., 295 S.W.2d 571 (1956). KRS 406.111.

Here the husband and wife were married in 1972 and separated in the latter part of 1974. The child was born on May 25, 1975. The evidence here as to the marriage relationship is conflicting. The father indicated that the marital relationship did not cease 10 months prior to the birth of the child. The wife testified that the marriage was over. The trial court though found the existence of the presumption. Consequently the district court determined that the husband was presumed to be the father of the child.

However, the July 28, 1982 judgment adjudicating paternity is incorrect when on its face it finds that the blood test is sufficient evidence to rebut this presumption. When the trial court makes specific findings on the face of the judgment, it would be improper to speculate on the weight given other evidence not found therein. CR 52.01. There is no indication the district court considered anything but the blood test herein.

The presumption of paternity and legitimacy, however, is one of the strongest known in the law. *Tackett v. Tackett*, Ky., 508 S.W.2d 790 (1974). As with any legal presumption, it is rebuttable by factual evidence. In order to bastardize a child though, the evidence must be of a higher degree than that required to convict a person of even a minor criminal offense. *See Bradshaw, supra; see also Simmons v. Simmons*, Ky., 479 S.W.2d 585 (1972). It is not proper to use blood tests alone to rebut this presumption in actions under KRS Ch. 406.

KRS Ch. 406 is limited in application to those cases where the children are born out of wedlock. That is not the situation here. *See Green v. Commonwealth, ex rel*

*Helms,* 297 Ky. 675, 180 S.W.2d 865 (1944); *Simmons, supra.*

Here the evidence indicates that the husband and wife were lawfully married when the child was conceived. It is questionable whether the district court had any jurisdiction to consider the paternity case. Ky. Const. § 113(6). Subject matter jurisdiction is never waived. *Johnson v. Bishop,* Ky.App., 587 S.W.2d 284 (1979). It is the duty of the trial court to consider its jurisdiction before determining other matters. *See* 20 Am.Jur.2d, *Courts* § 92 (1965).

Insofar as the majority opinion concludes that a decision of paternity in this case does not bastardize the child, the law entertains the fiction that a child may have two fathers. The majority is correct that to the extent medical science advances truth, the law should accept its benefit. However, when we seek truth we should not ignore the facts. A child is not yet conceived in *A Brave New World* with two or more fathers. If we are to advance the concerns of law, science, and truth we should not perpetuate such fallacies. Consequently, while KRS 406.011 may allow an action for paternity for a child conceived during wedlock but outside of marital relations strong public policy concerns over the collateral bastardization of innocent children will not permit me to endorse the emasculation of the rights of non-parties, whether that be the father or unrepresented child.

I must agree with the learned dissent by Judge Miller in the Court of Appeals wherein he concludes that scientific determination of parentage within a family union in the long run will result in governmental alignment of all citizens and destroy the traditional family unit as the anchor of our society. In the majority opinion, KRS 406 is being used as merely an ancillary means to obtain child support from the putative father; however, absent this action the presumed father has an obligation of support. Maintenance of such an action in which the allegations of the complaint alone will weaken the family unit should not be approached so lightly.

Paternity is often difficult to establish in a court of law. The paternity suit is painful and often a sordid proceeding where the truth, concealed by mutual accusation, is not easily determined by a judge or a jury required by human nature to use subjective standards. As a result the paternity determination is often based on factually dubious evidence. Any procedure that places a paternity case on a more substantial foundation than the acceptance of one person's word against another is always welcomed by the legal community. A blood test result should not, however, be the only evidence relied on in a paternity suit although it has a rightful place along with other probative evidence in the presentation of a paternity action to the trier of fact.

Kentucky has long held to the excluded father standard of paternity. Blood test results are given the same evidentiary weight as any other evidence and cannot be as a matter of law conclusive on the question of paternity. KRS 406.111. Where the blood test results indicate a probability of paternity, it cannot be asserted as a matter of law to be dispositive of the issue. The HLA factor of 99.93 percent and statement of "paternity is practically proved" is a medical opinion not a legal conclusion and should not be inferred as such. *See* Jaffee, *Comment on the Judicial Use of HLA, a Paternity Test Result and Other Statistical Evidence: A Response to Terasaki,* 17 Journal of Family Law 457 (1978–1979), for a discussion questioning whether HLA tests can be legally relevant, independent evidence that a certain man fathered a child.

All the evidence should be considered by the jury when it makes its final determination. Where the blood test results alone indicate a probability of paternity, regardless of the certainty of the degree therein, such evidence is totally insufficient to rebut the strong presumption of a child being legitimately conceived during the marriage. While much evidence herein points to the possibility of paternity of the putative father, there is no evidence to otherwise exclude the presumed father. From the lack of evidence, we do not know if the husband

would or would not also fall in the 99.93 percent HLA probability factor. The evidence must go beyond a reasonable doubt and must be of a higher degree than that required to convict a person of a minor criminal offense. Certainly, the HLA blood test is evidence, but in my view, it does not alone rebut the presumption of legitimacy.

Traditionally there were six blood test systems used in paternity suits, and they all relied on the red-cell system. The relatively recent and continuing development of the Human Leukocyte Antigen tissue test, or HLA, has only greatly increased the possibility of exclusion in paternity actions. The results of the tests on the mother, child and alleged father are compared to ascertain if the antigens present in the child's blood are also present in the alleged parents. The very nature of the antigen test is one of a developing system.

The argument that the degree of accuracy of the HLA test is controlling is not convincing. The 99.93 percent HLA test result should not be considered as an inclusion figure. The percentage is really a statement indicating that only .07 of the random population of males having the same genetic components are possibly the father of the child in question. *See* 46 A.L.R.2d 1000. *See also* Jaffee, *supra.*

Despite the reliability of the HLA test, no single test will exclude all non-fathers absolutely. Testing does not render positive results proving paternity. The guidelines of the American Medical Association Committee on Transfusion and Transplantation and the American Bar Association's Section on Family Law, Committee on Standards indicate that standard procedures should be adopted to facilitate the introduction of blood tests in court. There is no agreed upon standard procedure or universally accepted test. *See* Persyn, *A Survey of the Admissibility of Blood Test Results in Paternity Actions in the Fifty States and the District of Columbia,* Journal of Legislation, Summer 1981, pp. 301–321. It appears to me that under these circumstances that it is illogical and procedurally irrational and unfair to allow any party to use probable or statistical evidence as direct, independent primary proof upon an issue of affirmative, ultimate and actual fact with respect to which the party has the burden of proof. *See* Tribe, *Trial by Mathematics: Precision and Ritual and Legal Process,* 84 Harvard Law Review 1329 (1971).

While jury veniremen would rejoice if released from their onerous burden, the current HLA tests are not conclusive finders of fact and may never supply more than a statistical probability of proof. Terasaki recognizes in his article on HLA tests criticism of the tests for high error rates. Terasaki, *Resolution by HLA Testing of 1000 Cases Not Excluded by ABO Testing,* 16 Journal of Family Law 543 at 548 (1977–78). There are, however, many appropriate uses for HLA test results in actions relating to paternity. Their use as conclusive evidence though may lead the trier of fact to believe that the putative father is the right one in spite of the fact that the test results can never directly support an assertion that the man is the claimed father. In my view, it is critical that the traditional judicial safeguards against undue weight being given to statistical and scientific evidence should be preserved. All the evidence should be considered in every case without undue weight being given to any particular piece of evidence.

The decision of the Court of Appeals should be reversed and judgment of the circuit court should be reinstated.

STEPHENSON, J., joins in this dissent.