# Combs v. Poulos et al.

(Decided December 18, 1931.)

618

W. C. EVERSOLE for appellant.

CRAFT & STANFILL for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The facts on which the debt of appellant and defendant below, Grant Combs, arose are stated in the case of Perry Garage v. Combs, 221 Ky. 576, 299 S. W. 196, and another phase of the case is shown in the case of Taylor v. Combs, 232 Ky. 333, 23 S. W. (2nd) 545. It was a judgment in favor of Combs against the Perry Garage, a partnership in which one Harry Taylor and his wife were interested, and was for the value of an automobile alleged to have been converted by the garage partnership. It was rendered in the Perry circuit court at its April term, 1926, and on August 2, of the same year, the defendant therein executed a supersedeas bond which the plaintiff and appellee here, Anastasia Poulos and her husband, D. Poulos, signed as sureties. A judgment for $400 was affirmed by this court in favor of Combs, and he, being unable to collect it from the principal in the supersedeas bond, filed an action against Poulos and wife as sureties thereon to recover the amount of his judgment, interest, and costs. The wife was released from liability because of her marriage at the time of signing the bond, but judgment was rendered against her husband upon which execution issued. It was levied by the sheriff on some real property in the city of Hazard, and he advertised its sale; whereupon Mrs. Poulos brought this action against the sheriff and Combs, the plaintiff therein and appellant here, to enjoin the enforcement of the levy, upon the ground that the property levied on belonged to her and not to her husband against whom the execution issued.

The answer of Combs denied the material averments of the petition and by counterclaim sought to cancel the deed by which Poulos conveyed the property to his wife upon the ground that it was fraudulent and

made for the purpose of hindering, delaying, and defeating the creditors of the husband in the collection of their debts. Following pleadings made the issues and upon submission the court sustained the prayer of the petition and granted the injunction prayed for, from which judgment Combs prosecutes this appeal.

The practice of the case by counsel for Combs (who by his counterclaim was attacking the involved conveyance as fraudulent) was, to say the least of it, peculiar, in that no evidence was introduced with reference to the facts relating to the execution of the deed by Poulos to his wife. The entire testimony was directed to what occurred on the occasion of the execution of the supersedeas bond, a part of which was, that the husband at that time made an affidavit before the clerk who took the bond "that he is worth $2000.00 beyond the amount of his debts, and has property in said state, subject to execution of the value of $2000.00." It was not alleged, nor attempted to be proven, that the affidavit was false, and so far as this record discloses the husband at the time he signed the bond, and even now, was and is perfectly solvent. Besides, what occurred at the time of the execution of the bond (unless it disclosed some material fact on the charge of fraud made in the counterclaim) was wholly immaterial on the only issue in the case, i. e., *actual* fraudulent intent on the part of the husband in conveying his property to his wife, or, if it was for a valuable consideration, then *knowledge* of such fraudulent intent on her part. The only evidence in the case having any relevancy to the issue formed by the pleading, and the one tried, is a copy of the deed which was executed on January 2, 1926, seven months before the supersedeas bond was signed by the husband, and which, of course, makes the appellant a subsequent creditor of the husband, i. e., that his debt arose out of a transaction that occurred after the attacked conveyance was made.

Counsel for appellant cites some cases from this court and some texts dealing with the question of *agency* and its subdivision, of a spouse acting as agent for his or her companion, but none of which has even a remote bearing upon the facts of this case, since the actual signing of the supersedeas bond was admitted by the wife and her husband in the pleadings. If, perchance, the signing of the husband's name to that obligation and

his liability thereon was in dispute, because his wife had signed his name thereto without his authority, then the cited cases and authorities might be relevant; but in the absence of such contention, the principles they announce have no bearing whatever upon the issues involved. One cited authority is: "Corpus Juris, section 688, volume 30." There are only two subjects treated in that volume that contain sections as high as 688, and they are, "Homicide" and "Husband and Wife." The section so numbered under the subject of "Homicide" relates to the right of appeal from judgments of conviction, and the corresponding section under the subject of "Husband and Wife" relates to "Injury resulting in death," neither of which, it will be perceived, could possibly have any bearing upon any fraud entering into the conveyance sought to be set aside in this action.

Fraud, of which the law takes cognizance, is divided into two general classes—constructive and actual. The first (constructive fraud) "is a breach of legal or equitable duty which, irrespective of the moral guilt of the fraud feasor, the law declares fraudulent because of its tendency to deceive others, to violate public or private confidence, or to injure public interests. Neither actual dishonesty of purpose nor intent to deceive is an essential element of constructive fraud. An intent to deceive is an essential element of actual fraud. The presence or absence of such an intent distinguishes actual fraud from constructive fraud." 26 C. J. 1061, sec. 4. Actual fraud "is intentional fraud" and "consists in deception intentionally practiced to induce another to part with property or surrender some legal right, and which accomplishes the end designed." See same reference, page 1060, sec. 3. Such are the general definitions, and they may each be perpetrated in many ways and may be designed to accomplish many hidden purposes, but constructive fraud does not necessarily involve evil intent or dishonesty of purpose on the part of the persons perpetrating it, while in actual fraud such intent and purpose *must* exist and the one seeking relief from it must both allege and prove it. However, the establishment of the facts may be done by such weighty circumstances as to produce conviction on the part of the jury or the court trying the issue. Actual fraud is never presumed, nor is there a shifting of burden on account of relationships, as is true in cases of constructive fraud.

It must be proven by either express testimony or convincing circumstances, while constructive fraud, according to the statements of opinions and text-writers, may be presumed from the circumstances of the case, none of which need be stated in this opinion. It is sufficient to say that if the acts done, and which it is claimed produced the fraud, taking into consideration the time of their doing and the effect produced on the party claimed to be defrauded thereby, are sufficient to produce the conviction that the result was of such a character, it will be so adjudged and the proper relief granted, an instance of which is section 1907 of our present Statutes, giving relief to creditors against transfers of the debtor's property without valuable consideration; or, as sometimes said, in cases of purely voluntary conveyance.

In such cases the immediate parties to the transaction may not have intended to defraud nor entertained an evil motive, but the law denounces such acts as obstructive to the creditor of the transferer and permits him to nullify the transaction in an appropriate proceeding. But where the creditor, or another having the right to do so, seeks to nullify a transaction because of *actual* fraud in its execution, he must, we repeat, both allege and prove it. In support of what we have just said is the text in 27 C. J. 44, sec. 70, which treats of "Presumptions and Burden of Proof" in actions of this nature, and in which it is said, inter alia: "In actions at law and where a charge of actual fraud is involved in suits in equity, not only is fraud never presumed, but it must be affirmatively alleged and proved, by the party who relies upon it, either for the purpose of attack or defense." In the vast list of cases cited in note 57 to that text are those of Meece v. Colyer, 166 Ky. 581, 179 S. W. 579, and many others preceding it. There are a number of later ones from this court to the same effect, but it is unnecessary to cite them, since there is no exception to the rule and practically if not all the courts in this country approve and enforce it.

Prior creditors may attack a conveyance as being fraudulent for constructive fraud, and may succeed generally without proof of *actual evil intent* on the part of the perpetrator of the fraud; but subsequent creditors (i. e., those whose debts were both potentially and actually created after the fraudulent transaction) cannot succeed in an attack upon the conveyance which was

made prior to the creation of their debt without proving *actual* fraud as hereinbefore defined. 27 C. J. 474, sec. 117, and page 521, sec. 198; Shannon v. Duffield, 218 Ky. 770, 292 S. W. 322; Marcum v. Marcum, 177 Ky. 186, 197 S. W. 655; Lillard v. McGee, 4 Bibb, 165; Johnson v. Skaggs, 2 S. W. 493, 8 Ky. Law Rep. 601. See, also, same volume 555, sec. 258, and other Kentucky cases in note 21 thereto.

The defendant and appellant, Combs (and who occupied the position of plaintiff in his counterclaim herein), was and is a creditor whose debt against the appellee, D. Poulos, the husband of Anastasia Poulos, was both potentially and actually created after the execution and recordation of the attacked deed, and under the principles hereinbefore announced it was incumbent upon him to allege and prove *actual* fraud in that transaction as is hereinbefore defined. He not only failed to do that, but did not even attempt it, and both the court below and this one has nothing before it remotely bearing upon the issue involved, except a copy of the attacked deed. It recites a consideration of "$1.00 cash in hand paid, the receipt of which is hereby acknowledged, and the agreement by the second party (Mrs. Poulos) to assume pay off and discharge all the existing liens on said property," etc. The record does not show the amount of those liens, nor was there any effort made to show that none existed. We are told in brief of counsel for appellees that they aggregated more than $13,000 and that statement, though it cannot be considered by us, is not even denied by counsel for appellant. However, under the law as hereinbefore enunciated, it would make no difference, unless, perhaps, it was also shown that not only was there no actual consideration, but that the husband who executed the conveyance was left without any property and totally insolvent, plus such other facts as would establish actual fraud.

We repeat, we have no such testimony in this case, and the court below, as well as ourselves, was and are left with no alternative except to uphold the validity of the attacked conveyance, and from which it follows that the judgment was proper, and it is affirmed.