Rudy SCOTT and S. & S. Construction
Company, Inc., Appellants,

v.

FARMERS STATE BANK and George Hollis,
Appellees and Cross-Appellees.

Court of Appeals of Kentucky.

Dec. 16, 1966.

Rehearing Denied Feb. 17, 1967.

King, Deep & Branaman, Henderson, for appellants.

James Holloran, Sturgis, for Farmers State Bank.

J. D. Ruark, Morganfield, for George Hollis.

DAVIS, Commissioner.

Farmers State Bank (hereinafter Bank) and George Hollis (hereinafter Hollis) recovered judgments against Rudy Scott and S. & S. Construction Company, Inc., (both of whom shall be referred to as Scott), based on claimed fraudulent misrepresentations to them by Scott. The judgment in favor of the Bank was in the sum of $5,074.55; the amount awarded Hollis was $18,201.17. Scott seeks reversal of those judgments; the Bank and Hollis have filed cross-appeals asserting their entitlement to greater sums than awarded by the trial judge, who rendered the judgments after hearing the case without the intervention of a jury.

Before stating the specific questions presented on appeal, which are somewhat different as to the Bank and Hollis, we shall outline the factual background.

Incident to completion of Barkley Lake the U. S. Corps of Engineers sought bids for clearing the lands to be inundated. Scott was the successful bidder on Units 7, 8, 9 and 10 of Group 2 of the clearings at a total bid price of $1,172,695. Although these units were awarded to Scott in one contract, there was separate bidding as to each unit; the unit involved in this litigation is Unit 8, on which Scott's successful bid was $227,065.

Scott sublet the work on Unit 8 to Hollis by written contract wherein Hollis undertook to perform the necessary clearing for $98,000. Hollis began work under his subcontract but did not complete it. The various facets of the appeal before us had their genesis in Hollis' failure to complete the contract.

Hollis first learned that clearing work was available when an acquaintance of his telephoned to inform him that Scott was looking for bulldozer operators. Hollis communicated with Scott and they arranged to meet on February 2, 1963. On that date they viewed at least a portion of the area included in Unit 8, and Hollis saw an aerial photograph of the project. There are contrarieties in evidence, later to be discussed, as to certain other matters which may have occurred on that day. At any rate, Scott and Hollis entered into the subcontract on February 7, 1963, in which Hollis undertook to do the necessary clearing on Unit 8 for $98,000.

Hollis needed financial backing to begin work. He consulted officers of the Bank, and related in general terms what he had in mind; they requested him to have Scott meet with them in order that they might better understand the situation. On February 11, 1963, Scott and Hollis met with the Bank's executive vice-president, Frank L. Steelman, Jr. The purpose of the meeting, as stated by Mr. Steelman, was to

enable the Bank's officers to determine whether Hollis could make money on the contract, thus assuring that the Bank's loan to him would be a sound one.

On that occasion, according to Mr. Steelman (and denied by Scott), in direct answer to what Hollis could expect to make on the contract, Scott answered "$20,000." In addition to that, Steelman related, Scott stated that Hollis should realize another $20,000 from the saleable timber to be cleared from the tract. Steelman testified that Scott told him that the total acreage to be cleared was 706 acres. Scott agreed that periodic payments accruing to Hollis would be made payable to Hollis and the Bank, jointly. It is not disputed that such payments as were made to Hollis by Scott were made in compliance with that agreement.

The Bank advanced Hollis $5,000 on February 11, 1963; $3,000 on February 25, 1963; $2,000 on March 28, 1963, and $1,000 on April 20, 1963, all of which advancements were evidenced by separate promissory notes. The Bank's officials desired some reassurance about these loans; on May 4, 1963, Scott complied with the Bank's request for an interview about the status of affairs, and, according to evidence for the Bank (disputed by Scott) assured the Bank's officers that Hollis' work was progressing satisfactorily and that Hollis had between $12,000 and $14,000 due him, which would be forthcoming shortly. On the strength of this renewed assurance the Bank advanced $4,000 to Hollis in two separate loans, and suffered Hollis to overdraw his checking account in the sum of $1,074.55.

■ The trial judge ruled that the Bank could not recover of Scott any portion of the first $11,000 it had advanced to Hollis. The basis for the lower court's ruling was that the alleged statements by Scott that Hollis would make $20,000 on the contract plus $20,000 on the timber were mere prophecies of future events. Even though the trial judge found as fact that Scott

did represent to the Bank that the acreage involved was only 706 acres, he correctly pointed out that the Bank's officers specifically disclaimed reliance upon the acreage in making the initial advances of $11,000. It is our view that the trial court correctly adjudged the controversy as between the Bank and Scott as to the first $11,000 advanced. That the statements of Scott were mere expressions of opinions as to future events seems clear; such statements are not actionable. Church v. Eastham, Ky., 331 S.W.2d 718.

■ A different situation prevails with respect to the funds advanced by the Bank in reliance upon what it claims were Scott's statements on May 4th. These statements, if made, were not opinions nor were they statements of future events or prophecies. They purported to be statements of present, material facts, and the Bank clearly showed that it explained to Scott that it would rely on the statements— and did so rely. The essential elements of actionable fraud are material representation, falsity, scienter, or recklessness, intention, reliance, deception, and injury. Collins-Moore & Co. v. Clement, 256 Ky. 731, 77 S.W.2d 1; Curd v. Bethell, 248 Ky. 127, 58 S.W.2d 261; 9A Ky. Digest, Fraud, ■ As respects Scott's representations to the Bank on May 4 relating to the quality of Hollis' work and the amount of money he had coming, the trial court was abundantly warranted in his holding that all of the stated elements of fraud were present.

Before embarking upon a separate discussion of the Hollis-phase of the appeal, we come to the first points presented by appellants which are applicable to the Bank's appeal as well as Hollis' appeal.

■ It is contended that there was no venue in the Union Circuit Court since neither Scott nor S. & S. Construction Company has a venue-situs there. This litigation originated when the Bank sued Hollis (a resident of Union County) and joined with him Scott and S. & S. Construc-

tion Company as co-defendants. Hollis brought a cross-claim against Scott and S. & S. Construction Company. The gist of appellants' argument is that venue in an action for fraud lies in the county where the injury occurs, not where the fraudulent misrepresentations were made. Conceding that the general rule in tort actions fixes venue in the county where the injury occurred, with certain exceptions not necessary to note, we think the venue in this case lay in Union County. The alleged acts of misrepresentation as to the Bank all occurred in Union County. At least part of the alleged misrepresentations to Hollis occurred in Union County. Where did the injury occur? As to the Bank it seems clear that its injury occurred to it in Union County, and consisted of its loss of money at its own banking office in that county. The same is true of Hollis; he lived in Union County, and what he lost was there lost. It is true that the work on Unit 8 did not occur in Union County, but the financial injury to Hollis affected him at home, in Union County.

■ The second point addressed to each appellee is the charge that the opinion of the lower court was not a sufficient one to qualify it as a finding of fact and conclusion of law within the purview of CR 52.01. We have examined the opinion of the trial court and conclude that it does adequately meet the requirements of the rule. It would unduly lengthen this opinion to recite the opinion of the trial judge, but we can find no merit in appellants' contention that the opinion is so deficient as to require remand of the entire case for a more specific finding of fact and conclusions of law. As will be discussed herein we do find that such a remand is necessary in part.

■ The third point advanced for reversal relates to claimed errors in rulings upon evidence admitted and refused. The chief point of contention in this area deals with the court's refusal to permit Scott to testify as to what officials of the U. S. Corps of Engineers told him about

Hollis' inadequate work. Of course the proffered evidence was hearsay if its purpose was to prove the truth of what the officials said to Scott, but appellants contend that it had relevance to demonstrate that Scott acted in good faith in subletting his $227,065 contract to Hollis for only $98,000, and that Hollis lost on the contract because of his own ineptness. This reasons in a circle, since again the statements of the officials would have to be accepted as proof of Hollis' failure to properly perform. An official of the U. S. Corps did testify and did state that Hollis was not properly equipped and organized to handle the work, so there was no prejudice anyway.

■ Another attack on the evidence relates to the Bank's being allowed to show misrepresentation as to acreage when its complaint had not specified such misrepresentation; the short answer to that is that no recovery in favor of the Bank was based on that asserted misrepresentation.

■ There are other complaints relating to the trial judge's permitting Scott to be cross-examined as to what the Corps told him about the cost of the project while refusing to permit Scott to show what percentage of Hollis' work the Corps would accept. These matters were presented in the record by evidence from an officer of the Corps; this was not a jury case; the trial judge was able to evaluate and weigh the evidence, and we are not able to discern any respect in which prejudicial error was committed by his admitting or refusing testimony.

The next point presented is that the Bank failed to prove a case. We have already stated that we think it did, but there remains the argument advanced by appellants that to allow the Bank to recover on the oral misrepresentations here is to violate the spirit of KRS 371.010(1), which provides that no action shall be brought to charge any person:

"For any representation or assurance concerning the character, conduct, credit,

ability, trade or dealings of another, made with intent that such other may obtain thereby credit, money or goods; * * " [unless the representation is made in writing].

In support of that position is cited Ramsey v. Reynierson, 200 Ky. 624, 255 S.W. 274. However, in Hill v. Halmhuber, 225 Ky. 394, 9 S.W.2d 55, at 57, it is said:

"In so far as the case of Ramsey v. Reynierson is in conflict with the views herein expressed, it is overruled."

The Ramsey case conflicted with the Hill case on the very point at hand. See also 32 A.L.R.2d 750. Our statutes do not abrogate the common-law remedy for fraud merely because the fraudulent misrepresentations are by parol. So appellants may have no succor from Ramsey v. Reynierson.

Appellants say that no case was made for the Bank because it failed to plead fraud with particularity as required by CR 9.02. We have examined the complaint and conclude that it set out the alleged fraud with sufficient particularity. It is *not necessary that the "particularity" commanded by CR 9.02 attain such detail as to recite each minute detail; it is enough to plead the time, the place, the substance of the false representations, the facts misrepresented, and the identification of what was obtained by the fraud.* See Clay, CR 9.02, pp. 165–166 wherein is contained a statement from Union Mutual Life Ins. Co. v. Simon, D.C.Pa., 22 F.R.D. 186 *as follows:*

"Rule requiring that averments of fraud be made with particularity does not require textbook pleading of all elements of fraud but requires merely that plaintiff set forth facts with sufficient particularity to apprise defendant fairly of charges against him."

As further noted in Clay CR 9.02 at p. 165, the rule requiring pleading of fraud and mistake with particularity is to be considered in light of the entire spirit of modern pleading which lays emphasis upon short, concise and direct pleading. United States v. Dittrich, D.C.Ky., 3 F.R.D. 475.

The appellants did not seek a more definite statement of the complaint as permitted to them by CR 12.05, nor is there any suggestion that appellants suffered surprise or prejudice when evidence was presented which had not been "spelled out" in detail in the complaint. In these circumstances the appellants may not complain.

Next the appellants contend that the Bank failed to prove any damages. This point is premised on the idea that the Bank did not prove that Hollis' obligation to it was uncollectible from Hollis. The record is replete with evidence that Hollis had no assets subject to execution at the time of trial. The Bank obtained judgment against Hollis; execution upon it was returned *nulla bona.* We regard this as sufficient proof of the Bank's damage in the present case.

The appellants challenge the judgment allowing recovery to Hollis on the following grounds: (1) Hollis did not prove a claim by clear and convincing proof; (2) Hollis' claim is barred by laches, waiver or ratification; (3) Hollis proved no damages.

We shall not undertake a detailed statement of the disputed factual circumstances as they pertain to the claim of Hollis against the appellants. It suffices to say that there was sufficient evidence to induce the trial court to believe that Scott did knowingly make material, false representations to Hollis, and that Hollis relied upon them to his damage. The record supports the inference that Hollis was affirmatively deceived when Scott told him that the project was "set up" by the Corps of Engineers at $98,000, and even detailed in what manner that sum was allocated. The evidence supports the view that Scott deliberately misled Hollis as to the number of acres to be cleared and the method to be used in performing the work. It seems

plain that Hollis lost substantially all he had in his efforts to pursue the contract.

The difficulty we have is that the trial judge recited in his opinion:

"Scott contends that Hollis' failure to perform was because of his own lack of ability to perform, his lack of managerial capacity, lack of proper equipment and manpower. The Court has no doubt but that all of these qualities were lacking, but the undertaking was initiated by Scott's misrepresentations and had it not been for these misrepresentations the parties would not be in this situation; therefore, he [Scott] is the one who must answer in damages."

The trial court made no finding touching the extent to which Hollis' inability may have been causative of Hollis' damages or loss. It seems to us that even if Scott had been guilty of the grossest fraud he may not be made to respond for such loss, if any, as may have resulted—not from the fraud—but from Hollis' own lack of knowhow. Since no finding in this regard has been made, we remand the case to the trial court for further consideration on this point, with directions to make a specific finding in conformity with the opinion. The trial court may, of course, permit further evidence if it is deemed requisite for an appropriate determination of the matter.

The judgment is affirmed as to the appeal against the Bank, and is affirmed as it relates to the Bank's cross-appeal; the judgment is reversed on the original and cross-appeals as between Hollis and appellants, with directions that further proceedings be had in conformity with this opinion.