Gary DENZIK, Appellant,

v.

Candy DENZIK, Now Blazar, Appellee.

No. 2004–SC–1131–DG.

Supreme Court of Kentucky.

June 15, 2006.

Rehearing Denied Aug. 24, 2006.

Kelly Thompson Jr., Thompson & Associates PSC, Bowling Green, Counsel for Appellants.

Timothy J. Crocker, Mark Allen Thurmond, Crocker & Wilkey, Franklin, Counsel for Appellee.

WINTERSHIMER, Justice.

This appeal is from an opinion of the Court of Appeals which reversed a judgment based on a jury verdict rendered against Blazar for fraudulent misrepresentation.

The questions presented are whether there is sufficient evidence of fraudulent misrepresentation; and whether the statute of limitations bars the claim. Other issues relate to the question of so-called paternity fraud and the matter of whether promises between married partners should be supervised by the court system.

The parties were originally married in 1981 and later divorced in May of 1984. They remarried in December of 1984 and were divorced in March 1990. During the second marriage, Blazar gave birth to a daughter in June of 1987. The parties lived together as a family until the 1990 divorce. Denzik was ordered to pay weekly child support for the one child. Blazar was awarded custody of the child subject to regular visitation by Denzik.

This action arose after Blazar disclosed to Denzik in September 2000, that the child was the product of an extramarital affair with a former boyfriend. Blazar requested the former boyfriend to undergo a DNA paternity test which indicated that the child was the product of the extramarital affair and not Denzik's. When it was determined that Denzik was not the biological father of the child, he successfully obtained a termination of child support obligations from the circuit court. On December 18, 2000, Denzik filed a civil action in the circuit court seeking damages for the fraudulent misrepresentation of the paternity of the child to him.

At trial, Blazar testified that she saw a picture of her ex-boyfriend's daughter in a local newspaper in 2000 and claimed to notice a similarity between that child and her own daughter who was 13 years old at the time. Blazar asked her former boyfriend to take a paternity test which he did. The result was a determination that the child born during the marriage of Den-

zik and Blazar was in fact fathered by the ex-boyfriend.

Denzik testified that he had suspected that Blazar had been unfaithful to him during the marriage but she had denied such conduct when questioned about it. The jury found Blazar guilty of fraud and awarded Denzik damages in the sum of $54,720.26. This represented a demand by Denzik for all child support payments made by him for the support of the child for the past five years. The Court of Appeals reversed the jury verdict. This Court granted discretionary review.

## I.  Standard of Review

When reviewing a jury verdict, the appellate court is restricted to determining whether the trial judge erred in failing to grant a motion for directed verdict. The reviewing court must consider all evidence favoring the prevailing party as true and is not at liberty to determine the credibility or weight which should be given to the evidence. *Lewis v. Bledsoe Surface Mining Co.*, 798 S.W.2d 459 (Ky. 1990). The reviewing court must draw all reasonable inferences in favor of the claimant, refrain from questioning the credibility of the claimant, and from assessing the weight which should be given to any particular item of evidence. *United Parcel Service Co. v. Rickert*, 996 S.W.2d 464 (Ky.1999). The reviewing court may reverse the verdict of the jury only when it is so flagrantly against the weight of the evidence as to indicate passion or prejudice. *Bierman v. Klapheke*, 967 S.W.2d 16 (Ky.1998). *Rickert, supra*, held that in an action for fraud, the claimant must establish six elements: 1) a material misrepresentation; 2) which is false; 3) known to be false or made recklessly; 4) made with inducement to be acted upon; and 5) acted in reliance thereon and causing injury. In developing the proof, consideration must be given to the character of the testimony, the coherency of the entire case as well as the documents, circumstances and facts presented. *Rickert.*

CR 9.02 must also be considered because it sets out that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."

## II.  CR 9.02—Particularity

Compliance with the particularity required by CR 9.02 merely commands that the claimant set forth facts with sufficient particularity to apprise the defendant fairly of the charges against him or her. *See Scott v. Farmers State Bank*, 410 S.W.2d 717 (Ky.1966). As noted in *Scott, supra*, the rule requiring pleading of fraud with particularity is to be considered in the light of the entire spirit of modern pleading which lays emphasis on short, concise and direct pleadings. *See United States v. Dittrich*, 3 F.R.D. 475 (E.D.Ky.1943). As in *Scott*, Blazar in this case did not seek a more definite and certain statement or bill of particulars as permitted by CR 12.05. In addition, there is no suggestion that Blazar suffered surprise or prejudice when evidence was presented which had not been detailed in the complaint. Under this circumstance, we do not accept the argument of Blazar. A pleading is sufficient if it identifies the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations. *See Gottreich v. San Francisco Inv. Corp.*, 552 F.2d 866 (9th Cir.1977).

In *Kellerman v. Vaughan*, 408 S.W.2d 415 (Ky.1966), a malicious prosecution action, Commissioner Clay observed that it has been stated that a court should not dismiss a claim unless it appears the plaintiff would not be entitled to relief under any state of facts which could be proved in

support of it. *See also Ewell v. Central City*, 340 S.W.2d 479 (Ky.1960).

Here, we are of the view that the complaint was sufficient to give the defendant adequate notice of claims against her. The testimony at trial indicates that she fully understood the nature of the claims. We find no error in regard to the application of CR 9.02. The underlying purpose of the particularity requirement is to provide the defendant with fair notice of the claim in order that he or she may prepare an appropriate response. It must be remembered that general assertions of fraud or fraudulent conduct do not provide the notice that is required and are consequently insufficient to raise the question of fraud without supporting particularity. *Cf. Perma Res. & Dev. Co. v. Singer Co.*, 410 F.2d 572 (2nd Cir.1969).

### III.   Statute of Limitations

In view of the fact that we believe that fraudulent misrepresentation arose in this case, we find that it was ongoing to the extent that the conduct of Blazar came within the applicable statute of limitations set out in KRS 413.130(3). Denzik recovered only the last five years of his support payments.

### IV.   Evidence

■   The Court of Appeals based its conclusion that the evidence could not support a claim of fraud because of two findings it made. It stated, "no evidence in the record supports a finding that Blazar intentionally deceived Denzik as to the paternity of the child, or that Blazar knew of the fact that Denzik was not the father of the child until 2000." From this point it reasons that Denzik failed to show fraud. We disagree.

Among the key facts in this case is that when his wife was pregnant, Denzik received a telephone call accusing Blazar of having an affair. Blazar convinced him that the call was a prank and made assurances that no affair had occurred. Furthermore, Blazar disavowed any affair during the divorce. Together with testimony that the other man had a small income at the time of the divorce, the jury was free to form a reasonable conclusion that Blazar had a motive to conceal the affair as well as the issue of paternity and that she did take positive steps to conceal the information.

The jury had ample evidence to believe that Blazar knew of the fact that Denzik was not the father. Testimony revealed that, at the likely times around conception, Blazar had intercourse in the affair more frequently than with her husband. This information created a reasonable inference that Blazar should have known that it was more likely that Denzik was not the father. From this conclusion, the jury could reasonably find that by her other actions, she intentionally hid any suspicion from Denzik. Thus, the evidence would support a finding of fraud under the instructions.

■   There is a presumption of a child born in wedlock as being a child of the marriage. *Little v. Little*, 275 S.W.2d 588 (Ky.1955). It is natural to assume such unless there was cause to assume otherwise. Denzik was assured by his wife that there had been no affair when he received the telephone call. Furthermore, during the divorce proceedings, Blazar gave testimony that she was certain that Denzik was the father even though there was evidence to the contrary to the effect that she concealed the affair.

■   Actual fraud, as opposed to constructive fraud, consists in successful deception intentionally practiced to induce another to part with property or some legal right. *Boatwright v. Walker*, 715 S.W.2d 237 (Ky.App.1986) *citing Combs v.*

*Poulos,* 241 Ky. 617, 44 S.W.2d 571 (1931). There was sufficient evidence to support the jury's finding that Blazar intentionally hid facts and convinced her husband that there was no affair. Because of Blazar's concealment, Denzik had no reason to challenge the presumption. That concealment afforded Blazar a financial gain at the time of the divorce and possibly provided a strategic advantage in the divorce negotiations.

The Court of Appeals misapplied a concept from foreign law, *McBride v. Jones,* 803 So.2d 1168 (Miss.2002), to arrive at a conclusion of law that child support does not benefit the mother, and thus she is not liable for support wrongfully paid. It used this concept to preclude any recovery of child support under any circumstances. In this particular case, where there was intentional concealment of the affair, not only at the time of the pregnancy but also throughout the divorce, together with the conditions under which Blazar decided to reveal the affair and paternity, where the jury could impute scienter from the circumstances, this Court cannot agree.

This holding does not create a new class of fraud. Denzik's so-called "paternity fraud," is nothing more than ordinary fraud. The facts support a conclusion that Blazar made several efforts to conceal the knowledge of the affair because it would have brought immediate question to paternity. She further concealed this information throughout the divorce for the purpose of securing child support from Denzik, but later used the same information in an attempt to harm Denzik and the daughter's relationship.

From the other testimony, it is clear that the jury was in the best posture to determine the credibility of Blazar's claim of sudden discovery that the daughter had a father other than Denzik. Blazar, in her testimony, indicated that when the child began to undergo puberty, her appearance changed so dramatically that she began to consider for the first time the possibility that her former boyfriend was the father of the child. The boyfriend testified regarding the alleged resemblance between the child here and his own daughter born during his marriage. The jury examined numerous photographs of the child at various ages and rejected the theory and testimony presented by Blazar. Thus, the jury was best able to determine whether this explanation was credible or reasonable given the other facts.

Among other inferences available to the jury, Blazar's alleged interference with visitation schedules could have been inferred to be a show of guilt. If the jury believed she committed fraud, it could have reasoned that the alleged interference with Denzik's visitation with the daughter was at least an ongoing further attempt to conceal thereby strengthening the jury's conclusions.

Because of the complex equities of this case, the jury was best situated to measure credibility and ascertain the truth of this case and it was error for the Court of Appeals to substitute its judgment. In this case, it is obvious that the jury believed that Blazar's ongoing actions to conceal the affair caused Denzik to believe that he was the father and that this concealment caused Blazar to realize a gain. This ruling does not in any way conflict with our precedents on erroneous amounts paid in child support, because error is not fraud.

Cases involving excess child support payments made by judicial error have determined that recoupment or restitution of the excess payments is inappropriate unless there exists an accumulation of benefits not consumed for support. *See, e.g., Clay v. Clay,* 707 S.W.2d 352 (Ky.App. 1986). Such considerations are appropriate in those cases because the spouses are

the parents of the child receiving support. However, in the case of fraud and misrepresentation of expenses to the spouse, the court has ordered restitution, albeit with considerations to limit the rate of payment in order to prevent detriment to the child(ren) supported. *See Connelly v. Degott*, 132 S.W.3d 871 (Ky.App.2003) (Former wife who was found to have misrepresented actual child care expenses was ordered to reimburse the father at a rate of $100 per month so as to mitigate any impact on the children). Both of these cases dealt with the actual parents to the children. In this case, it was determined that somebody other than the father of the child was paying child support thereby giving this case a different character than the others.

A careful examination of the record indicates that the testimony of Blazar was inconsistent and unbelievable during the trial. Clearly, the jury did not believe her version of the facts. Under all the circumstances, the evidence presented at trial supported the jury award for fraudulent misrepresentation.

This decision, and the jury verdict, merely affirms that fraud is a well-proven age-old area of law that has weathered the varied and multiple tests of time. It neither creates new law nor does it allow new application of the principles. Furthermore, this decision creates no new incentives for paternity testing because paternity is a very small element amongst many others in the burden of proof, not the least of which is the fact that the jury had to believe Denzik's ignorance of the affair and that Blazar intentionally interfered with visitation in order to hide the child from Denzik and that she knew or should have known the child was not Denzik's. In short, the facts of this case can only be repeated with fraud, not with a floodgate of paternity tests. This case is not new

litigation because there is nothing new about this case or the result—fraud is very difficult to prove and juries only award it when they find the evidence to be overwhelmingly in favor of the plaintiff, as they did here.

The decision of the Court of Appeals is reversed and the jury verdict is reinstated.

COOPER, GRAVES and SCOTT, JJ. concur.

LAMBERT, C.J., dissents by separate opinion and is joined by JOHNSTONE and ROACH, JJ.

JOHNSTONE, J. dissents by separate opinion and is joined by LAMBERT, C.J., and ROACH, J.

LAMBERT, Dissenting Chief Justice.

The behavior of Ms. Blazar (formerly Denzik) was reprehensible in at least two respects. First she engaged in an extramarital affair during her marriage to Appellant. Second, for spite and for what may have been pecuniary advantage, when her own child was twelve or thirteen years old, she revealed that one other than Appellant was the child's biological father, thereby destroying the relationship between her adolescent daughter and the only father the child had ever known. While Ms. Blazer may not be financially bankrupt, she behaved in a morally bankrupt manner.

Nevertheless, there are larger issues here and the visceral antagonism one may feel for Ms. Blazar should not impel this Court to rush to an unwise decision. We should not create an incentive on the part of either parent to attack the paternity of their children.

The presumption of paternity and legitimacy of a child born to a married woman is one of the strongest of common law

presumptions.[1] At common law, courts were loathe to allow any evidence that a child born to a married woman was not the offspring of her husband despite circumstances that, from time to time, ignored biological reality. While early common law courts lacked the ability to say with certainty whether a child was indeed the offspring of the mother's husband, other policy reasons were clearly part of the thinking, and those policies are no less valid today than they were then. Our scientific advances should not now be used to mark a child as illegitimate just because certainty is possible. Rather a compelling reason should be presented and the effect on all the parties and the children carefully weighed before such a step is taken. Although we live in a Jerry Springer[2] world, some secrets need to be kept.

The better approach, perhaps, is found in Justice Wintersheimer's dissenting opinion in *Bartlett v. Commonwealth.*[3] The majority of this Court in *Bartlett* allowed the presumption of paternity to be overcome by medical testing. However, Justice Wintersheimer relied on *Bradshaw v. Bradshaw*[4] to state that the evidence required to bastardize a child was of a much higher degree than is required to convict a person of a minor criminal offense.[5] Additionally, he stated that, "while KRS 406.011 may allow an action for paternity for a child conceived during wedlock but outside of marital relations [,] strong public policy concerns over the collateral bastardization of innocent children will not permit me to endorse the emasculation of the

rights of non-parties, whether that be the father or unrepresented child."[6]

A child conceived during wedlock enjoys the presumption of legitimacy.[7] Additionally, we have stated that in order to disprove the legitimacy of a child born during lawful wedlock, "it must have been shown that the husband was incapable of the act of procreation or that he did not have coition with his wife within any reasonable period of gestation."[8] The stigma arising from being marked as the child of an illicit union is an injury to the child, and is too great to inflict lightly.

As a matter of policy, this Court should address these issues from the perspective of the child, and not the mother and her former husband. Their pecuniary interest should be entirely secondary. I fear the effect of the majority opinion will be to create an "open season" on the paternity of children in Kentucky. This claim was brought by a deceived former husband to recover child support he had paid. Under the rule announced, any father who is willing to bring such a claim in the hopes of discontinuing child support and recovering what has already been paid will be free to obtain or threaten to obtain a paternity test in an attempt to find a way out of the monetary obligations imposed by law. Or, some may be willing to bring such claims merely to harass their former spouses and their children. Even though Ms. Blazer began this episode, and even though she obtained the paternity testing in this case,

1. *Tackett v. Tackett,* 508 S.W.2d 790 (Ky. 1974).

2. The Jerry Springer Show is a television program which often deals in issues regarding infidelity and paternity.

3. *Bartlett v. Commonwealth, ex rel. Calloway,* 705 S.W.2d 470 (Ky.1986).

4. *Bradshaw v. Bradshaw,* 295 S.W.2d 571 (Ky. 1956).

5. *Bartlett* at 473.

6. *Id.* at 474

7. *Little v. Little,* 275 S.W.2d 588 (Ky.1955).

8. *Id.* at 590 (citations omitted).

the majority in its disdain for her has inadvertently created an incentive for fathers to investigate whether they are the biological fathers of their children in the hope of a financial windfall.

Although Mr. Denzik had to pay support for a child that was ultimately determined not to be his biological offspring, he received the intangible value of thirteen years of fatherhood of a child to whom he appears to have been devoted. We should not put a price on the value of relationships between parents and children, and certainly not incentivize the destruction of these relationships.

JOHNSTONE and ROACH, JJ., join this dissenting opinion.

JOHNSTONE, dissenting Justice.

I concur fully with the dissenting opinion of Chief Justice Lambert, but write separately to endorse the rationale of the Court of Appeals in reversing the jury verdict in this case. The Appellant's claim is based upon the theory of fraudulent misrepresentation and, to prevail on a theory of fraud, the claimant must prove all elements by clear and convincing evidence. We have held that in this type of action, the party claiming fraud must prove six elements: "a) a material representation, b) which is false; c) known to be false or made recklessly; d) made with inducement to be acted upon; e) acted in reliance thereon; and f) causing injury." *United Parcel Service Co. v. Rickert*, 996 S.W.2d 464, 468 (Ky.1999) *quoting Wahba v. Don Corlett Motors, Inc.*, 573 S.W.2d 357, 359 (Ky.App.1978).

In my opinion, the Appellant did not produce *any* evidence of intentional fraud on the part of Blazar. Appellant admitted that he had no evidence that Blazar ever made a false representation to him. His statement that a mother "knows" who the father of her child is and that Blazar must

have known that Appellant was not the father at the time of conception, defies medical science and is totally without support in law or fact. Appellant admitted that he and Blazar never discussed the paternity of the child before September 2000, and that Blazar never made a statement to him that he was the father. Further, it is undisputed that at the time of Blazar's brief affair, she and Appellant had an ongoing sexual relationship. In short, there is absolutely no evidence in the record of this case that Blazar knew the child was not the Appellant's daughter any earlier than 2000.

For the foregoing reasons, and those set forth in Chief Justice Lambert's dissenting opinion, I would affirm the Court of Appeals.

LAMBERT, C.J.; and ROACH, J., join this dissent.