**John WHEAT, Appellant,**

v.

**COMMONWEALTH of Kentucky, CABINET FOR HEALTH AND FAMILY SERVICES, ex rel. C.P., Appellee.**

No. 2005–CA–002389–MR.

Court of Appeals of Kentucky.

Feb. 16, 2007.

Benjamin D. Rogers, Glasgow, KY, for appellant.

Jeffery S. Sharp, Barren County Attorney, Dennis Wilcut, Assistant Barren County Attorney, Glasgow, KY, for appellee.

Before ABRAMSON and DIXON, Judges; HOWARD,[1] Special Judge.

## OPINION

HOWARD, Special Judge.

John Wheat appeals from a Findings of Fact, Conclusions of Law and Order of the Barren Circuit Court, Family Court Division, holding him in contempt of court for

---

1. Special Judge James I. Howard completed this opinion prior to the expiration of his Special Judge assignment effective February 9, 2007. Release of the opinion was delayed by administrative handling.

failing to pay a child support arrearage. The court imposed a sentence of 180 days in jail, to be suspended on the condition that Wheat begin paying the arrearage. Wheat argues that DNA testing proved that he is not the biological father of the child in question, and that as such the family court erred in ordering him to pay any child support. Pursuant to *Denzik v. Denzik*, 197 S.W.3d 108 (Ky.2006), issued after the trial court made its ruling, we reverse and remand the matter to the Barren Family Court for further findings of fact on one issue, as set out herein.

On April 23, 1985, a paternity action was filed by Christy Pruitt in the Barren District Court alleging that John Wheat was the biological father of her child. On May 6, 1985, Wheat signed a reply acknowledging paternity and agreeing to pay reasonable child support. An order was entered on May 9, 1985 establishing paternity and Wheat was ordered to pay $20 per week in child support.

The record reveals that Wheat did not make any child support payments. On June 26, 1997, DNA testing, performed pursuant to court order, conclusively proved that Wheat was not the biological father. On March 27, 1998, Wheat filed a motion under Rule 60.02 to set aside the paternity judgment, alleging misrepresentation on the part of the mother, in inducing him to sign the agreed judgment. Specifically, he alleged in his affidavit that she "swore" to him at the time that he was the father and then told him years later that he was not. On April 30, 2001, an order was entered by the district court finding that Wheat was not the biological father and providing that the May 9, 1985 order of paternity and all prospective child support obligations were "set aside." The issue of child support arrearages was reserved for further proceedings. This or-

der was made final and appealable but no appeal was filed by any party.

There does not appear to have been any other activity in this matter until 2004, after jurisdiction of the case had passed to the newly-instituted Family Court Division of the Barren Circuit Court and after the child had reached the age of majority. On August 18, 2004, an order was entered establishing the amount of the arrearage to be $13,387.41. Then on March 31, 2005, the Barren County Child Support Office filed a motion to hold Mr. Wheat in contempt for failure to pay the arrearage. Wheat responded by filing another CR 60.02 motion, seeking to set aside the August 18, 2004 order establishing the arrearage.

After taking proof on the motions, the Barren Family Court entered its Findings of Fact, Conclusions of Law and Order on October 28, 2005. It denied Wheat's motion to set aside the prior order and held that past child support payments, once accrued, are fixed and may not be modified. It sustained the motion for contempt and imposed a 180–day suspended sentence, conditioned on the repayment of the arrearage in the amount of $50 per month. This appeal followed.

Wheat argues that the trial court committed reversible error both in denying his motion to set aside the arrearage and in sustaining the motion for contempt. He maintains that the entry of the April 30, 2001 opinion and order of the district court, setting aside the paternity order, effectively extinguished or vacated any corresponding obligation of support, including any arrearage. He argues that it is inequitable to require him to pay support for a child that is not his. He seeks an order reversing on appeal with instructions to grant his CR 60.02 motion.

In response, the Commonwealth argues that a party can be a legal father without

being a biological father, citing *S.R.D. v. T.L.B., Formerly T.L.D.*, 174 S.W.3d 502 (Ky.App.2005). It maintains that Wheat never denied paternity until DNA testing was conducted and that Wheat's signing of the Agreed Paternity Judgment in 1985 and his remaining silent on the issue of paternity from then until the time of the DNA test, "is evidence he held himself out to be the child's father." The Commonwealth argues that Wheat is equitably estopped from denying that he is the legal father of this child.

■ This case involves both equitable and legal issues. As to the equitable issues, the case of *S.R.D. v. T.L.B., Formerly T.L.D., supra*, to which each party cites, is instructive. In *S.R.D.*, a former husband was found to be equitably estopped from denying paternity and support obligations because he did not challenge paternity for six years after learning that he may not have been the child's biological father. He also continued to maintain filial bonds with the child and held himself out as her father even after learning that he was not the biological father. He told the court of his emotional attachment to the child and of hers to him. He even asked to be allowed continued visitation with the child, at the same time he asked for an order determining that he was not her legal father and had no obligation of support.

In affirming the circuit court's refusal to terminate support, this Court found the father in *S.R.D.* to be equitably estopped from asserting that he was not the legal father as a result of his actions and the child's reliance on those actions. However, this Court recognized that "a 60.02 motion is a proper vehicle for challenging a judgment of paternity," *S.R.D.*, 174 S.W.3d at 504; and that the trial court—though it did not do so because of the estoppel issue—"had 'clear authority' under CR 60.02

to set aside the previous order of support …" *S.R.D.*, 174 S.W.3d at 505. See also: *Cain v. Cain*, 777 S.W.2d 238 (Ky.App. 1989) and *Spears v. Spears*, 784 S.W.2d 605 (Ky.App.1990).

Though the facts of the instant appeal are distinguishable from those of *S.R.D.*, the analysis is the same. It has already been determined that Wheat is not the biological father of this child. The question in equity is whether he is estopped, by virtue of his conduct since the child's birth and the child's reliance on that conduct, from asserting that he is not the legal father. We must answer this question in the negative. Wheat was never married to Ms. Pruitt, so there was no presumption of paternity, as was present in *S.R.D.* It is uncontroverted that Wheat did not establish bonds of love and affection with the child, nor did he act—in the language of *S.R.D.*—as the "psychological father." He apparently has had no relationship with this child whatsoever. He is, in those respects, wholly unlike the appellant in the *S.R.D.* case. We conclude, therefore, that from an equitable standpoint there is no basis to require Wheat to pay any child support for this child, who is not, in fact, his. Furthermore, the equitable analysis under *S.R.D.* goes to the question of whether one who is not the biological father can nevertheless be held to be the *legal* father. In this case, the district court in 2001 ruled that Wheat is not the legal father of this child and that order was not appealed, thus resolving that issue.

■ If a man is not the biological father of a child and cannot be held on equitable grounds to be the legal father, we acknowledge that there is a strong argument, based on simple fairness, that he should not be required to pay child support. There is, however, another issue in this case, legal rather than equitable, which we

must consider. In fact, the trial court in its order did not evaluate this matter from an equitable standpoint at all. It rather indicated a belief that it was bound by a line of cases such as *Clay v. Clay*, 707 S.W.2d 352 (Ky.App.1986); *Stewart v. Raikes*, 627 S.W.2d 586 (Ky.1982) and *Whitby v. Whitby*, 306 Ky. 355, 208 S.W.2d 68 (1948), *overruled in part on other grounds, Knight v. Knight*, 341 S.W.2d 59 (Ky.1960), which held that past child support obligations, once accrued, may not be modified. In the language of the *Whitby* court, quoted by the court in *Stewart:*

> We perceive that no distinction can be made between a judgment based upon a claim for alimony or maintenance and a judgment based upon any other legal right. After the judgment is entered, although it may be subject to modification at a subsequent date, it is binding and final until modified; and any payments which may have become due previous to such modification constitute a fixed and liquidated debt in favor of the judgment creditor against the judgment debtor. *Whitby*, 208 S.W.2d at 69; *Stewart*, 627 S.W.2d at 588.

Thus, if there is no exception to this rule, Wheat has no recourse, regardless of the equities of the matter. However, after the trial court issued its order in this case, the Kentucky Supreme Court rendered its opinion in *Denzik v. Denzik, supra,* holding that a father could recover back from his former wife child support payments previously made to her because the support obligation arose from her fraudulent and years-long claim that he was the child's biological father. Though the facts in *Denzik* differ somewhat from those at bar—the plaintiff in *Denzik* did not file a motion to recover past child support payments in his divorce case, but rather in a separate civil suit for fraud—we believe *Denzik* supports Wheat's contention that past child support payments are voidable in some circumstances.

*Denzik* did not overrule *Clay* and the line of cases relied on by the trial court. Neither did it carve out an exception to the rule set out in these cases for every situation where a subsequent paternity test proves that the man paying the child support is not the biological father. However, we believe it did recognize an exception to that rule in the event of fraud or misrepresentation. The Supreme Court in *Denzik* stated:

> This ruling does not in any way conflict with our precedents on erroneous amounts paid in child support, because error is not fraud.
>
> Cases involving excess child support payments made by judicial error have determined that recoupment or restitution of the excess payments is inappropriate unless there exists an accumulation of benefits not consumed for support. *See, e.g., Clay v. Clay*, 707 S.W.2d 352 (Ky.App.1986).... However, in the case of fraud and misrepresentation of expenses to the spouse, the court has ordered restitution.... In this case, it was determined that somebody other than the father of the child was paying child support thereby giving this case a different character than the others.
>
> . . . .
>
> In short, the facts of this case can only be repeated with fraud, not with a floodgate of paternity tests. *Denzik*, 197 S.W.3d at 112, 113.

Thus, since *Denzik*, if the mother was guilty of fraud or misrepresentation, even child support obligations that have already accrued may be modified. The Commonwealth appears to recognize this and asserts in its brief that, "[t]here is simply no evidence of the unmarried woman deliberately concealing material facts in this

case." This is accurate only in the limited sense that the trial court did not hear any testimony. The parties advised the court that the facts were not in dispute. However, neither the court nor the parties were aware at that time of *Denzik*, which opinion had not yet been issued by the Supreme Court. The results of the DNA test, by themselves, offer some indication that the mother did not tell the whole truth. Wheat's affidavit, cited above, further supports this proposition. Additionally, in the Commonwealth's own response to Wheat's 60.02 motion, it conceded,

> The Mother, Christy Pruitt, has some fault in this matter in that she apparently did not disclose the name of the true biological father when she supplied the name of John Wheat as the purported father of Shane Pruitt back in 1985.

The trial court did not hear evidence on this issue because it believed that it did not have any authority to set aside past child support obligations, under *Clay, et al.* The Supreme Court in *Denzik* has now established that a trial court does have such authority, on a finding of fraud or misrepresentation, even when the case involves past obligations. We therefore remand this matter for an evidentiary hearing and findings of fact on this issue, whether or not the mother was guilty of fraud or misrepresentation.

The *Denzik* opinion sets out the factors which must be shown to establish such fraud or misrepresentation:

> a material misrepresentation; 2) which is false; 3) known to be false or made recklessly; 4) made with inducement to be acted upon; and 5) acted in reliance thereon and causing injury. *Denzik*, 197 S.W.3d at 110.

From the record, it appears that most of these factors may be satisfied in this case and that the primary point of contention may be factor number 3, whether Ms. Pruitt made the false representation that Wheat was the father knowingly or recklessly. If the family court finds that she was guilty of fraud or misrepresentation, based on the above factors, Wheat's CR 60.02 motion should be granted and both the arrearage and the order of contempt should be set aside. If not, then in spite of the seeming inequity of the situation, we hold that Wheat is legally responsible for the arrearage, in the amount established, because a valid child support order was in effect for that period of time and such order cannot be modified, as to past obligations already accrued, except upon a showing of fraud or misrepresentation. In that event, the contempt order was also appropriate, within the discretion of the trial court.

For the foregoing reasons, we reverse the findings of fact, conclusions of law, and order of the Barren Family Court and remand this matter for further proceedings, as set out above.

ALL CONCUR.