OPINION

KRAMER, JUDGE:
This appeal and cross-appeal are brought by K.W. (“mother”) and J.S. (“father”) from a Henderson Family Court order denying a Kentucky Rules of Civil Procedure (CR) 60.02 motion to set aside an agreed judgment of paternity. Having reviewed the record and applicable law, we affirm the order as to the judgment of paternity but reverse that portion of the *401 order discontinuing child support, and remand for further proceedings.
Mother gave birth to twins on October 5, 2007. At that time, mother and father, who were not married, were residing together. Also living with the couple was their eldest child, who was born in 2002.
When the twins were about eighteen months old, father decided that he wanted to claim them as his dependents for income tax purposes. Mother and father went to the Henderson County Attorney’s office on April 15, 2009, and mother signed a complaint requesting an adjudication of paternity and support order. Father signed an accompanying notarized affidavit stating that he was the biological father of the twins. Mother and father both signed an agreed judgment of paternity, which stated that father did not want a DNA test, was waiving all rights to have a DNA test performed in the future, and that- no DNA test would be ordered in the future. The judgment declared him to be the father of the twins, but made no ruling as to child support at that time because father and mother were residing together and father was providing “in kind services.”
In early October 2009, father and mother separated. In December of that year, the County Attorney filed a motion to set child support for father. Although there is no child support order in the record, a support order was apparently entered on January 25, 2010, following an appearance by the parties before the court.[1] Father did pay child support for some time, and was jailed at one point for failure to pay child support.
On August 6, 2013, father filed a CR 60.02 motion to set aside the paternity judgment, claiming that it was based upon a fraudulent representation by mother that he was the biological father of the twins.
At the hearing on the motion, mother stated that the twins’ biological father was a co-worker who was not “in the picture.” Mother testified that father suspected the twins were not his children at the time of their birth, and that she had confirmed to him that he was not the biological father before the entry of the paternity judgment. Photographs were introduced into evidence that purported to show that the twins are partly of Mexican descent, whereas father and mother are both Cau- - casian. According to mother, father agreed to the paternity judgment for tax purposes, fully aware that the twins were not his biological children. Mother testified that the twins call father “daddy” and think of him as their father.
Father testified that he did not know the true paternity of the twins at the time the paternity judgment was entered in 2009, and only became suspicious over time as he observed their dark skin, hair and eyes. He did admit that he has known since January 2010 that the twins were not his biological children, and that he confirmed this by administering a paternity test he purchased at a drugstore. When he was asked by the court why he waited for three years to file the CR 60.02 motion after this discovery, he explained that he did not know how to proceed and could not afford an attorney. He testified that he has only seen the twins a “handful” of times since he and mother separated, usually on the monthly occasions when he visits the older child, but acknowledged that the twins call him “daddy.”
Having heard the parties’ testimony, the family court found that there was evidence that father knew or should have been aware that he was not the twins’ biological *402 father, that he benefited from being able to claim them on his taxes, that he had established a relationship with them and acted as their father and still saw them sporadically. The court concluded that there was no basis to set aside the paternity judgment because there was no fraud on mother’s part, and that father, by virtue of his own conduct, was equitably estopped from setting aside the judgment of paternity. The court also ruled, however, that it would be unjust to require father to continue to pay child support, and ordered that he was to have no future child support obligations from the date of entry of the order.
Mother filed an appeal, arguing that the trial court’s discontinuation of child support was an abuse of discretion and should be reversed. Father filed a cross-appeal, arguing that the paternity judgment must be set aside as it is inequitable. We will address the cross-appeal first, because reversal on that issue would render the child support issue moot.
The trial court’s denial of a motion made pursuant to CR 60.02 is reviewed for an abuse of discretion. The rule permits the court to relieve a party from a final judgment on the following grounds:
(a) mistake, inadvertence, surprise or excusable neglect; (b) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59.02; (c) perjury or falsified evidence; (d) fraud affecting the proceedings, other than perjury or falsified evidence; (e) the judgment is void, or has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (f) any other reason of an extraordinary nature justifying relief. The motion shall be made within a reasonable time, and on grounds (a), (b), and (c) not more than one year after the judgment, order, or proceeding was entered or taken.
Because father made his CR 60.02 motion more than three years after entry of the paternity judgment, the trial court correctly held that he could not rely on grounds (a), (b), or (c) for relief. The court further held that father had not proved the essential elements of fraud to justify setting aside the order pursuant to subsection (d), as the court found no proof of the misrepresentation of a material fact or inducement, noting instead that father signed the agreed paternity judgment for his own tax advantage. Nor did the court find any reason of an extraordinary nature to justify relief under subsection (f).
In his cross-appeal, father argues that he is entitled to relief under subsection (d) because mother made the material misrepresentation to him that he was the biological father of the twins in order to induce him to agree to the paternity judgment. Substantial evidence, in the form of the parties’ testimony at trial, supports the trial court’s finding that father knew or should have known the twins were not his biological children, and that he only entered into the judgment in order to gain a tax benefit. Since it appears that both father and mother were complicit in the entry of the paternity order, this argument must fail.
Father further argues that the prospective application of the paternity judgment is not equitable, because it is now undisputed, based on mother’s testimony and the appearance of the children, that he is not the biological father of the children. Father relies on Crowder v. Commonwealth ex rel. Gregory, 745 S.W.2d 149 (Ky.App.1988), a case in which a default judgment was entered after the appellant *403 failed to respond to a paternity complaint. Five years later, a blood test was performed which unequivocally excluded the appellant as the father of the child. The trial court nonetheless denied the appellant’s motion for relief from the paternity judgment pursuant to CR 60.02(e) and (f). A panel of this Court reversed on the grounds that it was no longer equitable for the judgment to have prospective application. The Court concluded that such a result was mandatory under KRS 406.111, which at that time provided that
If the court finds that the conclusions of all the experts, as disclosed by the evidence based upon the [blood] tests, are that the alleged father is not the father of the child, the question of paternity shall be resolved aceordingly.[2]
The Court held that the use of the word “shall” in the statute left the trial court without discretion in the matter. Id. at '151. The opinion also stated that the continued application of the paternity judgment against the appellant was unacceptable for various reasons: for instance, the child would potentially have a legal claim to a part of the appellant’s estate and to his social security account to the disadvantage of his true children; the Commonwealth could never recoup public assistance paid to the child’s mother from the child’s true father; and that it was unfair to the child to decree a man to be his father who bore no relation to him. Id.
Since Crowder, however, this Court has held that the doctrine of equitable estoppel is applicable in paternity cases, with the result that a man who is not the biological father of a child can nevertheless be held to be the legal father on equitable grounds. S.R.D. v. T.L.B., 174 S.W.3d 502 (Ky.App.2005). The doctrine is based on the theory that
[w]here one has, by a course of conduct, with a full knowledge of the facts with reference to a particular right or title, induced another, in reliance upon such course of conduct, to act to his detriment, he will not thereafter be permitted in equity to assume a position or assert a title inconsistent with such course of conduct, and if he does he will be estopped to thus take advantage of his own wrong.
Id. at 506.
The elements of estoppel
(1) Conduct, including acts, language and silence, amounting to a representation or concealment of material facts;
(2) the estopped party is aware of these ' facts; (3) these facts are unknown tp the other party; (4) the estopped party must act with the intention or expectation his conduct will be acted upon; and (5) the other party in fact relied on this conduct to his detriment. .

Id.

There was substantial evidence in the form of mother’s testimony and the appearance of the twins themselves to support the determination that father was aware at the time he signed the paternity judgment that they were not his biological children, but that he chose to acknowledge them as such in order to gain a tax benefit. Moreover, he testified that he learned definitively that the twins were not his biological children in 2010, but waited over two years from that time to file the CR 60.02 motion. In that respect, the facts of this case are distinguishable from those in Wheat v. Commonwealth Cabinet for Health and Family Services, ex rel. C.P., *404 217 S.W.3d 266 (Ky.App.2007). In that case, the appellant initially acknowledged paternity of the child and agreed to pay support. He never made the support payments, however. Twelve years later, DNA testing proved that the appellant was not the biological father. This Court held that he did not need to pay the accrued support because he had no relationship with the child whatsoever. Id. at 269. By contrast, in this case, father allowed the twins to continue thinking of him as their father, and to call him “daddy.” Under these circumstances, the trial court' did not abuse its discretion in applying the doctrine of equitable estoppel.
On appeal, mother argues that the trial court erred in relieving father of any further child support obligations. The only explanation given by the trial court for discontinuing child support is that mother admitted the children were not father’s biological children, and the court found that it would be unjust for him to continue to pay child support under these circumstances. He is nonetheless their legal father under the paternity judgment, and the children are statutorily entitled to support. “The father of a child which is or may be born out of wedlock is liable to the same extent as the father of a child born in wedlock, whether or not the child is born alive, for the reasonable expense of the mother’s pregnancy and confinement and for the education, necessary support and funeral expenses of the child.” KRS 406.011. Courts are permitted to deviate from the child support guidelines “where their application would be unjust or inappropriate.” KRS 403.211(2). In this case, the trial court found that father admitted paternity in order to gain a tax advantage. We fail to see the justice of continuing to recognize him as the twins’ legal father, while allowing him to avoid paying child support and thereby leaving the children without any means of paternal support whatsoever. “[A] trial court’s discretion is not unlimited. The test for abuse of discretion is whether the trial judge’s decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles.” Dickens v. Dickens, 401 S.W.3d 489, 491 (Ky.App.2013). The trial court’s decision to discontinue child support was an abuse of discretion, and is consequently reversed.
The Henderson Family Court order is affirmed insofar as it denied father’s motion to set aside the agreed judgment of paternity. The decision to discontinue child support is reversed, and the matter is remanded for further proceedings to determine child support.
ALL CONCUR.

. From comments made at the hearing, it appears that the child support order was entered in a different family court case involving the couple’s older child.

. The current version of the statute states that testing creates a rebuttable presumption of paternity.